UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNION ASSET MANAGEMENT HOLDING AG, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>SANDISK CORP., et al.,<br><br>          Defendants. | Case No. 15-cv-01455-VC<br><br><br>**ORDER GRANTING MOTION TO DISMISS AND INVITING MOTIONS TO RECONSIDER ORDER APPOINTING LEAD PLAINTIFFS**<br><br>Re: Dkt. Nos. 74, 86 |

SanDisk's motion to dismiss is granted, and the complaint is dismissed with leave to amend. Additionally, the Court invites interested plaintiffs to file motions to reconsider its prior order appointing the current lead plaintiffs.

**I.**

Under the PSLRA's "safe harbor," a "forward-looking statement" is not actionable as long as it is identified as forward-looking and "is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially" from predicted results. 15 U.S.C. § 78u-5(c)(1)(A)(i). The "meaningful cautionary statements" requirement is, in reality, quite forgiving: for example, it is enough to warn investors about "certain risks and uncertainties" that are "described in detail in the company's [SEC] filings." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (alteration in original).

The vast majority of the allegedly fraudulent statements identified in the complaint concern "financial projections," or "plans and objectives of management for future operations," or "future economic performance," or "the assumptions underlying or related to any of these issues," and are therefore forward-looking. *No. 84 Emp'r-Teamster Joint Council Pension Trust*

*Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003).  For example:

- "[W]e are increasing our full-year non-GAAP gross margin range to 47% to 49%, up from our previous forecast of 45% to 48%, reflecting continued strengthening of our product mix."  Complaint ¶21.

- "I project that SanDisk revenue from enterprise SSDs will exceed $1 billion in 2016 time frame. . . .  Our goal is to become a number one market share leader in enterprise SSDs by 2017 time frame."  Complaint ¶24.

- "I think over time, you'll see a shift maybe from SATA in particular to PCIe . . . .  I think we will see a trend over the next couple of years where we're replacing SATA applications with PCIe and SAS."  Complaint ¶26.

- "[The] best is yet to come for SanDisk."  Complaint ¶27.

- "[O]ur goal is that from enterprise solution sales, we want to grow this to $1 billion-plus of revenue in 2016 timeframe.  And by 2017 timeframe, we want to be a clear, number one market shareholder of all enterprise SSD business."  Complaint ¶31.

- "Fusion-io will accelerate our efforts to enable the flash-transformed data center . . . .  Customers will benefit from the addition of Fusion-io's leading PCIe solutions to SanDisk's vertically integrated business model."  Complaint ¶33.

- "Fusion-io's innovative hardware and software solutions will be augmented by SanDisk's worldwide scale and vertical integration."  Complaint ¶33.

- "With the addition of Fusion-io's PCIe hardware and software solutions, SanDisk will have the broadest enterprise flash solution portfolio in the industry. . . .  At the same time, SanDisk's integration model will further enhance the quality, performance and reliability of these enterprise solutions while providing customers with valuable continuity of supply."  Complaint ¶34.

- "[W]e expect to generate synergies related to revenue, cost of goods sold, and expenses.  In terms of revenue, the acquisition of Fusion-io will accelerate our ability to grow in the enterprise market, with the broadest SSD solutions portfolio in the industry, applied

across a broader customer base."  Complaint ¶34.

- "[W]e look forward to growing our business aggressively in, and at a fast pace in the enterprise storage market."  Complaint ¶35.

- "[W]e had talked about $1 billion-plus of enterprise solution revenue in 2016 timeframe. With the acquisition of Fusion-io, we certainly believe we will be able to accelerate that opportunity.  In fact, we think we will reach the $1 billion-plus target with this acquisition in 2015."  Complaint ¶36.

- "[T]his does accelerate the opportunity for us in enterprise SSD, in terms of reaching our goal of $1 billion of revenue."  Complaint ¶37.

- "[W]e are very excited about the Fusion-io opportunity and believe that it will help us to continue to deliver very strong profits, as is indicated in our target financial model." Complaint ¶37.

- "[The acquisition of Fusion-io] will accelerate our transformation into a value added solutions provider and will further enhance our capabilities with new solutions, channels, customers and go-to-market expertise."  Complaint ¶46.

- "[SanDisk is] on an excellent path to deliver yet another year of record results." Complaint ¶46.

- "For our third quarter, we expect the strongest sequential growth to come from our embedded products, including both iNAND and custom embedded solutions."  Complaint ¶49.

- "[W]e expect the Fusion-io acquisition to close in our third fiscal quarter. . . .  We continue to expect the acquisition to be accretive to our non-GAAP earnings in the second half of our FY2015."  Complaint ¶49.

- "This portfolio, coupled with our broad and expanding customer reach and well-established vertical integration capabilities, positions us well to accelerate our momentum in the fast-growing market for enterprise Flash.  We expect our enterprise SSD revenue to surpass $1 billion in 2015, a year ahead of our previously stated timeline."  Complaint

¶55.

- "I will now turn to forward-looking commentary.  For the fourth quarter we have strong demand signals from our customers in all key product categories. . . .  [W]e expect to be in supply allocation and this will constrain our growth in some areas in Q4.  We will prioritize our business according to our strategic priorities and customer relationships."  Complaint ¶57.

- "[W]e expect that 2014 will be another record year in both revenue and earnings."  Complaint ¶57.

- "[W]e will work hard in the fourth quarter to meet the needs of our customers and service the demand out there. . . .  [W]e will work very closely with [our customers] and that demand will not go away for SanDisk."  Complaint ¶58.

- "[W]e see strong demand in all product categories for our business in 2015 timeframe, and SanDisk's focus will continue to be to have the best mix in terms of high-value solutions in our revenue."  Complaint ¶59.

- "[W]e expect that our revenues in this business are going to exceed $1 billion within the next year."  Complaint ¶68.

- "[W]e continue to expect that our enterprise solutions revenue will achieve $1 billion in 2015."  Complaint ¶80.

- "[E]nterprise SSD solutions will certainly achieve $1 billion for us in 2015 for our revenue."  Complaint ¶80.

- "So really all of these on our enterprise business positioning us in a unique and differentiated position leading to $1 billion goal for the year for us in enterprise."  Complaint ¶80 (sic).

- "[W]e believe, as I said, that we'll be in the upper half of our target financial model in the second half of 2015."  Complaint ¶81.

- "[O]ur Q4 results and the near-term outlook that we discussed in the call today is really nothing but a temporary setback. . . .  I look forward to a solid progress in our business

4

through the course of the year resulting in substantial momentum in our business in the second half of 2015." Complaint ¶82.

- "[W]e believe that we will achieve $1 billion in revenue in our enterprise revenue this year." Complaint ¶88.

- "[W]e fully expect that in 2016 time frame, we'll be back to year-over-year growth in our client SSD. Our road map of client SSD solutions is very solid; in fact, we had mentioned in our January call that a 3-bit per cell 1Y client SSDs are in qualifications with OEMs and I would like to point out here that this quarter, we will begin shipments of our X3 1Y client SSDs." Complaint ¶93.

These forward-looking statements were all accompanied by cautionary statements. *See* Aufhauser Decl., Ex. 1 at 3; Ex. 2 at 3; Ex. 3 at 1; Ex. 4 at 3; Ex. 5 at 3; Ex. 6 at 3; Ex. 7 at 3; Ex. 8 at 3; Ex. 9 at 3; Ex. 10 at 3; Ex. 11 at 1. And contrary to the plaintiffs' argument, these cautionary statements were not too general to be "meaningful" as that term is used in the case law: SanDisk's cautionary language was no more general than language the Ninth Circuit has previously held sufficient. In *Intuitive Surgical*, it was enough for a company to warn listeners that "comments mentioned on today's call may be deemed to contain forward-looking statements," that "[a]ctual results may differ materially from those expressed or implied, as a result of certain risks and uncertainties," and that "[t]hese risks and uncertainties are described in detail in the company's [SEC] filings." 759 F.3d at 1059 (last alteration in original). SanDisk's cautionary language tracked this format very closely: each cautionary statement warned that SanDisk's representatives would make forward-looking statements, that those forward-looking statements involved certain risks, and that listeners should consult SanDisk's SEC filings to understand those risks more fully.

Because the statements listed above are all forward-looking statements accompanied by meaningful cautionary language, the plaintiffs' claims are dismissed to the extent they are based on these statements. The plaintiffs may, of course, use factual allegations regarding these statements to bolster their arguments that other statements are actionable – to argue, for example,

5

that other statements were material or made with scienter.  But the forward-looking statements are not actionable in their own right.

**II.**

Aside from the forward-looking statements, the complaint identifies statements in which SanDisk assessed its progress in integrating Fusion-io, a company it had acquired:

- "The Fusion-io business performed in line with our expectations post acquisition. . . .  [W]e have made excellent progress in integrating Fusion-io into SanDisk."  Complaint ¶55.
- "We closed the Fusion-io acquisition in the third quarter and the integration of that business is going extremely well.  And so we are very happy with how that's going."  Complaint ¶65.
- "[We are] very pleased with the rapid progress that SanDisk has made.  The SMART Storage acquisition, Fusion-io acquisition, these all are in terms of integration going quite well."  Complaint ¶92.

These aren't forward-looking statements: whether the Fusion-io business performed in line with SanDisk's expectations, whether the Fusion-io integration was going well, and whether SanDisk was happy with how the integration was going are all statements that referred to past or present conditions.  The plaintiffs may rely on these statements without running afoul of the safe harbor.  But, for other reasons, the current complaint does not adequately allege that these statements constitute securities fraud.

In particular, the plaintiffs have not adequately pled scienter.  To survive this motion to dismiss, the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A) – that is, that the defendant engaged in "intentional conduct or deliberate recklessness," *Reese v. Malone*, 747 F.3d 557, 580 (9th Cir. 2014).  "A strong inference of scienter ;must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 569 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

6

308, 314 (2007)).  The current complaint doesn't give rise to an inference of intentional conduct or deliberate recklessness that is "at least as compelling" as any other explanation.  Even viewed collectively, *Reese*, 747 F.3d at 580, the complaint's allegations don't give rise a strong inference that the defendants intentionally (or with deliberate recklessness) made false statements to the investing public about how the integration was going.[1]

The complaint's weakness may stem, in part, from the way it's drafted.  The complaint is little more than a long list of block quotes from statements made by SanDisk representatives (parts of which have been bolded and italicized for reasons that the complaint does not really explain), followed by further block quotes from analysts (with further unexplained bolding and italicization), connected by a threadbare factual recitation that situates the quoted statements along a basic timeline, but that does little to explain the statements' collective significance in a way that gives rise to any kind of detailed, coherent narrative (as opposed to a skeletal, disjointed chronology) of the defendants' challenged conduct.  And because so many of these statements quoted in the complaint are obviously not actionable under the safe harbor, it's hard to tell what – if any – sense can be made of the remaining handful of statements that might conceivably be actionable.  This doesn't meet the demanding pleadings standards of the PSLRA.  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

### III.

All of the potentially actionable statements identified in the complaint – that is, those that don't fall within the PSLRA's safe harbor – were made on or after October 16, 2014.  That date is significant: it was the date that SanDisk released its third-quarter 2014 earnings, and (relatedly) it was the date that several prospective lead plaintiffs in this litigation used to define the beginning of their proposed class period.  The current lead plaintiffs, however, alleged a class period beginning much earlier – on April 16, 2014.  In appointing the lead plaintiffs, the Court accepted

---

[1]     In the same vein, it's not clear that the current complaint adequately alleges falsity or materiality with respect to the statements that don't fall within the safe harbor.  But the complaint's failure to plead scienter is so glaring that, for purposes of this motion, it doesn't matter.

that earlier date after taking a quick look at the complaint – not nearly the hard look it has now taken in response to the motion to dismiss. *Cf. Rosian v. Magnum Hunter Res. Corp.*, No. 13-cv-2668-KBF, 2013 WL 5526323, at *4 (S.D.N.Y. Oct. 7, 2013) ("The Court has taken only a quick look at the Rule 23 factors" – which are among the criteria for appointing a lead plaintiff in a securities case – "rather than conducted the in-depth analysis required" for class certification.). After taking a closer look, it appears that the class period proposed by the current lead plaintiffs was artificially long.

The PSLRA establishes a rebuttable presumption that the lead plaintiff in a securities case should be whichever entity "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Though this provision was designed to curb gamesmanship among securities plaintiffs, *see* H.R. Conf. Rep. 104-369 at 32-35 (1995), it has given rise to new forms of gamesmanship. *See, e.g.*, *In re Network Assocs., Inc. Secs. Litig.*, 76 F. Supp. 2d 1017, 1021-27 (N.D. Cal. 1999). In particular, it appears that securities plaintiffs sometimes manipulate their proposed class period in an effort to establish themselves as the presumptive lead plaintiff, where they would not be the largest stakeholder if a shorter, more realistic class period were used.

Here, the lead plaintiffs haven't been able to allege even a single statement between April 16, 2014 (the date they picked as the beginning of the class period) and October 16, 2014 (the date picked by other plaintiffs) that falls outside the safe harbor. As weak as the allegations are for the post-October 16 period, they appear frivolous for the pre-October 16 period.

"[T]he district court's order designating a lead plaintiff . . . can be revisited if circumstances warrant." *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000). Reconsideration may be necessary here. Using a class period that begins on October 16, 2014 (which seems far more realistic), the lead plaintiffs may not have the largest financial interest in the relief sought by the class. Accordingly, the Court invites any interested plaintiff to file a motion asking the Court to reconsider its prior order appointing the current lead plaintiffs.

Meanwhile, any amended complaint by the current lead plaintiffs must be filed within 21 days of this order.

**IT IS SO ORDERED.**

Dated: January 22, 2016

VINCE CHHABRIA
United States District Judge