UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNION ASSET MANAGEMENT HOLDING AG, et al.,<br>Plaintiffs,<br>v.<br>SANDISK LLC, et al.,<br>Defendants. | Case No. 15-cv-01455-VC<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 174 |

Although it's a close question, the motion to dismiss the Second Amended Complaint is denied.

Following multiple rounds of briefing on this and prior iterations of the complaint, the plaintiffs focus primarily on two categories of statements by the defendants. The first is a series of quantitative statements about enterprise SSD, the most aggressive of which was by defendant Mehrotra, who said on January 21, 2015 that "enterprise SSD solutions will certainly achieve $1 billion for us in 2015." SAC (Dkt. No. 148) at ¶ 93. The plaintiffs fail to state a claim for securities fraud based directly on these quantitative statements because they are forward-looking and subject to the PSLRA safe harbor. *See* Dkt. No. 104 at 1-5.

The second category of statements is a series of qualitative pronouncements about the strength of SanDisk's enterprise SSD portfolio – particularly the products obtained through the Fusion-io acquisition. On January 21, 2015, Mehrotra told investors: "We have largely completed our overall Fusion-io integration, and we are excited about the opportunities ahead with the broadest portfolio of enterprise SSD products in the industry." SAC at ¶ 91. In response to the question, "how should we think about the Fusion-io contribution to enterprise

SSD revenue," Mehrotra responded:

> Regarding the Fusion-io part of the business, as we had expected before, the Fusion-io part of the business is not at the run rate that it was pre-acquisition. It is – and that's what we expected during the time of acquisition as well. However, we have made strong progress in terms of integration. We have an excellent team, strong road map for Fusion-io products, and we expect in Q1 to have sequential growth in that part of the business. And certainly, as part of our $1 billion goal in 2015 for enterprise SSD solutions, Fusion-io revenue will be a significant contributor there as well. You may recall that the $1 billion goal at our last May Investor Day was actually a 2016 goal, and we pulled it to 2015 once we acquired Fusion-io.

*Id.* at ¶ 94; Petrocelli Decl., Ex. 3 (Dkt. No. 135-3) at 9-10. On March 3, 2015, Mehrotra told investors that, in the area of enterprise SSD, "SanDisk is really firing on all cylinders." SAC at ¶ 106. He noted that the Fusion-io integration was "going quite well," and that "Fusion-io now gives us number one market share position in PCIe solutions." *Id.*

In the abstract, these statements seem mostly like the kind of corporate puffery that does not give rise to a claim for securities fraud. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014). But the statements weren't made in the abstract. They were made in a particular context that could reasonably have led investors to rely on their accuracy and completeness. *See, e.g.*, *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996). During the January 21, 2015 call with investors, the defendants were trying to reassure the investing public that SanDisk would bounce back from specific negative events: poor revenue numbers in Q4 2014 and the loss of a major customer (Apple) in a different part of SanDisk's SSD business (namely, client SSD). SAC at ¶¶ 89-95. As shown by the entire transcript of the January 21 call (including the above-quoted statements from that call), the message SanDisk sought to convey was that enterprise SSD was causing the company to bounce back from this bad news, with Fusion-io enterprise SSD products a key contributor to the bounce-back. *Id.*; Petrocelli Decl., Ex. 3, at 3-8, 13-16.

But there were problems with Fusion-io that the defendants didn't disclose on January 21 or March 3. Most importantly, SanDisk missed its Q4 2014 internal sales forecast for the Fusion-io product (a PCIe-based SSDI) by a wide margin, with sales coming in 34% to 50%

lower than projected. SAC at ¶¶ 53, 121; *see also id.* at ¶ 62. This is according to CW5, who oversaw the development of Fusion-io products and was involved in regular meetings about SanDisk's internal sales and revenue goals.[1] *Id.* at ¶¶ 43-44, 53. In addition, according to CW5 and several other confidential witnesses, SanDisk was having difficulty integrating Fusion-io throughout the class period, and it was having particular difficulty adopting the sales model that was needed to successfully sell the Fusion-io products. *Id.* at ¶¶ 50, 57, 59-61, 65-66, 70-71, 74. In light of these undisclosed problems, the picture the defendants *did* paint for investors about enterprise SSD (and about the Fusion-io business in particular) created an impression "that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011). Investors being told that the Fusion-io business was playing a significant role in the bounce-back would want to know that SanDisk had actually missed its internal Q4 goals for that business by a wide margin, likely due in part to integration problems.

In addition to successfully alleging that SanDisk omitted material information about its enterprise SSD business, the complaint successfully alleges that the omissions were made with the level of intent necessary to state a claim for securities fraud. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017). If the defendants were aware of the undisclosed information, the most logical explanation for their failure to disclose it (even as they were explaining to investors that enterprise SSD in general and Fusion-io in particular was a primary reason the company would bounce back) was that they intended to conceal it. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991-92 (9th Cir. 2009), *as amended* (Feb. 10, 2009); *cf. Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708-11 (7th Cir. 2008). Therefore, in a case like this, the main question is simply whether the complaint creates a "cogent and compelling" inference that the defendants knew about the missed sales forecast and the integration problems at the time they spoke. *Zucco*, 552 F.3d at 998.

---

[1] The statements of CW5 appear for the first time in the most recent iteration of the complaint.

Primarily because of CW5, the operative complaint does indeed create the necessary inference. As discussed at paragraph 53, CW5 participated in regular meetings during the class period with his immediate superior, Scaramuzzo, where sales results and internal sales forecasts for enterprise SSD were discussed. In turn, CW5 knew from conversations with Scaramuzzo that Scaramuzzo regularly met with defendants Mehrotra and Bruner to inform them of the same results during the class period. SAC at ¶¶ 43-44. Although CW5's statements are based on hearsay and therefore deserve less weight than if CW5 had met directly with the defendants, the statements are supported by the factual context: SanDisk was touting enterprise SSD (and particularly the Fusion-io business) as a significant reason not to worry about the poor Q4 results and the loss of Apple as a customer, so it stands to reason that the defendants were particularly focused on the success of that part of SanDisk's business. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *cf. Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008). Therefore, the complaint creates a strong inference that the defendants knew that SanDisk had badly missed its internal Q4 forecast on Fusion-io sales and intentionally omitted this from their discussion of enterprise SSD during the class period. And in turn, if the defendants were participating in regular meetings involving the failure of SanDisk to meet its internal sales forecasts for Fusion-io products, it follows that they were aware of at least some of the reasons for this failure. These reasons related to problems with Fusion-io integration and product demand that were obscured or omitted on the January 2015 investor call. SAC at ¶¶ 50, 57, 59-61, 65-66, 70-71, 74, 111-114.

A case management conference is scheduled for July 25, 2017 at 1:30 pm. A joint case management statement will be due no later than July 18, 2017.

**IT IS SO ORDERED.**

Dated: June 22, 2017

VINCE CHHABRIA
United States District Judge