1   DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
    MAX R. SCHWARTZ (*pro hac vice*)
2   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
    The Helmsley Building
3   230 Park Avenue, 17th Floor
    New York, NY 10169
4   Telephone: (212) 223-6444
    Facsimile:  (212) 223-6334
5   Email: dweintraub@scott-scott.com
            mschwartz@scott-scott.com
6
    JOHN T. JASNOCH (Bar No. 281605)
7   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
    60 W. Broadway, Suite 3300
8   San Diego, CA 92101
    Telephone: (619) 233-4565
9   Facsimile:  (619) 233-0508
    Email: jjasnoch@scott-scott.com
10
    *Attorneys for Lead Plaintiffs*
11
    [Additional counsel on signature page]
12

13                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
14                      **SAN FRANCISCO DIVISION**

15   IN RE: SANDISK LLC SECURITIES          Case No. 3:15-cv-01455-VC
     LITIGATION
16                                          Hon. Vince Chhabria

17
                                            **LEAD PLAINTIFFS' REPLY**
18                                          **MEMORANDUM IN FURTHER**
                                            **SUPPORT OF CLASS CERTIFICATION**
19                                          **AND APPOINTMENT OF CLASS**
                                            **REPRESENTATIVES**
20
21                                          DATE: March 29, 2018

22                                          TIME:  10:00 AM

23                                          COURTROOM: 4, 17th Floor

24
            **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
25

26

27

28

1

<u>**TABLE OF CONTENTS**</u>

2

I.      INTRODUCTION ......................................................................................... 1

3

II.     LEAD   COUNSEL   ARE   ADEQUATE;   DEFENDANTS   AND   THEIR
        COUNSEL MISREPRESENT THE RECORD........................................................ 2

4

        A.      Defendants' Willful Misrepresentations Regarding the CW5 Allegations............... 4

5

        B.      Defendants' "Other Issues" Regarding Mr. Ober Are Meritless ........................... 10

6

        C.      Defense Counsel's Improper Conduct Involving Mr. Ober.................................. 14

7

        D.      Discovery Confirms the SAC's Accuracy ........................................................... 15

8

III.    LEAD PLAINTIFFS ARE ADEQUATE ...................................................... 16

9

IV.     PLAINTIFFS'  OUT-OF-POCKET  DAMAGES  METHODOLOGY  EASILY
        SUPPORTS PREDOMINANCE .................................................................... 18

10

V.      THE COURT SHOULD NOT MODIFY THE CLASS DEFINITION ......................... 20

11

VI.     CONCLUSION............................................................................................. 20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

LEAD PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES – CASE NO. 3:15-CV-01455-VC

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) ........................................................................ 18

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-md-2185, 2014 WL 2112823 (S.D. Tex. May 20, 2014) ..................... 19

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ................................................................... 19, 20

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
   662 F.3d 913 (7th Cir. 2011) .............................................................................. 3

*In re DJ Orthopedics, Inc. Sec. Litig.*,
   No. 01-CV-2238, 2003 WL 27363735 (S.D. Cal. Nov. 17, 2003)..................... 17

*DSC Commc'ns Corp. v. Next Level Commc'ns*,
   929 F. Supp. 239 (E.D. Tex. 1996)..................................................................... 17

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Penn. 2008)...................................................................... 20

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 Civ. 1897, 2011 WL 2581755 (S.D.N.Y. Apr. 29, 2011),
   *aff'd*, 2011 WL 2471267 (S.D.N.Y. June 21, 2011)......................................... 3, 4

*Evans v. IAC/Interactive Corp.*,
   244 F.R.D. 568 (C.D. Cal. 2007) ......................................................................... 3

*In re Extreme Networks Inc. Sec. Litig.*,
   No. 15-cv-04883, 2016 WL 3519283 (N.D. Cal. June 28, 2016)........................ 17

*In re FirstPlus Fin. Grp., Inc. Sec. Litig.*,
   No. Civ.A.3:98-CV-2551, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002) ........................ 18

*Gbarabe v. Chevron Corp.*,
   No. 14-cv-00173, 2017 WL 956628 (N.D. Cal. Mar. 13, 2017) ............................................. 3

*Granina v. Eddie Bauer LLC*,
   No. BC569111, 2015 WL 9855304 (Cal. Super. Ct. Dec. 2, 2015) ..................... 12

*Hatamian v. Adv. Micro Devices, Inc.*,
   No. 14-cv-00226, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................... 18, 19, 20

*Hatamian v. Adv. Micro Devices, Inc.*,
   No. 14-cv-00226, 2016 WL 2606830 (N.D. Cal. May 6, 2016)........................... 12

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009)........................................................................ 20

ii

*In re Intuitive Surgical Sec. Litig.*,
  No. 5:13-cv-01920, 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ........................ 16, 18, 19

*Kaplan v. Pomerantz*,
  132 F.R.D. 504 (N.D. Ill. 1990) ................................................................................. 3

*Lane v. Wells Fargo Bank, N.A.*,
  No. C 12-04026, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ................................. 3

*In re Lehman Bros. Sec. & ERISA Litig.*,
  No. 09 MD 2017, 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) .................................. 20

*In re LendingClub Sec. Litig.*,
  No. C 16-02627 WHA, 2017 WL 4750629 (N.D. Cal. Oct. 20, 2017) ....................... 16

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ..................................................................................... 19

*Longest v. Green Tree Servicing LLC*,
  308 F.R.D. 310 (C.D. Cal. 2015) ............................................................................... 19

*Lou v. Ma Labs., Inc.*,
  No. C 12-05409, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014) ........................................ 3

*In re Millennial Media, Inc. Sec. Litig.*,
  No. 14-cv-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ................................ 11

*Mola Dev. Corp. v. Orange Cty. Assessment Appeals Bd. No. 2*,
  80 Cal. App. 4th 309 (2000) ...................................................................................... 17

*N.J. Carpenters' Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ. 5653, 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011) ............................. 17

*In re Organogenesis Sec. Litig.*,
  241 F.R.D. 397 (D. Mass. 2007) .................................................................................. 3

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................................... 1, 2, 10

*Ret. Sys. v. Boeing Co.*,
  306 F.R.D. 175 (N.D. Ill. 2014) ................................................................................... 4

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ................................................................................ 16

*Silva v. TEKsystems, Inc.*,
  No. 12-CV-05347, 2013 WL 3939500 (N.D. Cal. July 25, 2013) ............................. 12

*In re Silver Wheaton Corp. Sec. Litig.*,
  No. 2:15-cv-05146, 2017 WL 2039171 (C.D. Cal. May 11, 2017) ...................... 18, 20

*In re Solar City Corp. Sec. Litig.*,
  No. 16-CV-04686, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ............................... 18

iii

*In re Symbol Techs., Inc. Sec. Litig.*,
    No. CV 05-3923, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) ............................. 11, 12, 13

*In re Tyco Int'l, Ltd.*,
    236 F.R.D. 62 (D.N.H. 2006) ........................................................................................ 20

*Varela v. Indus. Prof. and Tech. Workers*,
    No. C 08-1012, 2009 WL 10670788 (C.D. Cal. Oct. 28, 2009) ........................................ 3

*Victorino v. FCA US LLC*,
    322 F.R.D. 403 (S.D. Cal. 2017) .................................................................................... 3

*White v. Experian Info Sols.*,
    993 F. Supp. 2d 1154 (C.D. Cal. 2014) .......................................................................... 3

*Williams Corp. v. Kaiser Sand & Gravel Co., Inc.*,
    146 F.R.D. 185 (N.D. Cal. 1992) .................................................................................. 17

*Wrighten v. Metro Hosps., Inc.*,
    726 F.2d 1346 (9th Cir. 1984) ........................................................................................ 3

*Young v. Hilton Worldwide, Inc.*,
    No. 2:12-cv-01788, 2014 WL 3434117 (C.D. Cal. July 11, 2014) ................................ 12

**OTHER AUTHORITIES**

H.R. CONF. REP. NO. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ............................................................... 17

## I.      INTRODUCTION

Defendants are unable to substantively oppose class certification – they concede numerosity, commonality, typicality, superiority and that the fraud-on-the-market presumption of reliance applies for predominance.  (Opp'n at 6).  The challenges they raise are spurious.

Most importantly, the evidence that the SAC accurately describes the statements of CW5, Mr. Ober, is overwhelming.  ████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████  Indeed, the primary purported mischaracterization that Defendants raise involves the discussion of Fusion-io's 4Q-2014 internal revenue miss in ¶53,[1] *which Mr. Ober has never recanted* ███████████████████████████████.  Likewise, the evidence from Plaintiffs' investigative file proves that the few other CW5 allegations that Defendants challenge were not "invented" as Defendants argued in seeking dismissal of the SAC.  Moreover, discovery to date has confirmed the accuracy of Mr. Ober's statements to Plaintiffs' investigator and of the SAC.  (*Infra* 4-10).

In addition to being factually baseless, Defendants' adequacy argument premised on purportedly fabricated CW allegations is legally meritless.  Even when faced with serious questions regarding the accuracy of CW accounts in a pleading, courts have rejected attempts to disqualify lead counsel on adequacy grounds at the class certification stage.  *E.g.*, *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 47-48 (S.D.N.Y. 2012).  Defendants, notably, do not cite a single case finding Lead Counsel inadequate on that ground.  (*Infra* 2-3).

Unable to prove their original premise that the CW5 allegations were made up by Plaintiffs, Defendants pivot and accuse Plaintiffs' investigator of recording the interviews of Mr. Ober without his permission, ███████████████████████████████.  Their suggestion that Plaintiffs' investigator violated Cal. Penal Code §632.7 is particularly cynical

---

[1]      Unless otherwise stated, "¶–" and "¶¶–" are SAC citations, "Ex. –" are exhibits to the supporting Clark-Weintraub Declaration, emphasis is added, and internal citations are omitted.

given that the relevant law is not as settled as they claim, and that they spend the bulk of the Opposition unsuccessfully attempting to use the recordings for their own benefit.  Even when faced with admitted violations of Cal. Penal Code §632.7, however, courts have rejected defendants' attempts to drag them into such irrelevant, ancillary issues, and this Court should do the same.  (*Infra* 11-12).

Defendants' remaining arguments are make-weight and easily discarded.  Lead Plaintiffs, large institutional investors of the type Congress prefers to lead securities class action litigation, easily satisfy Rule 23's adequacy requirements.  (*Infra* 16-18).  Further, ample precedent establishes that the standard out-of-pocket damages methodology Lead Plaintiffs invoke aligns with their artificial inflation theory of liability, and satisfies *Comcast*'s minimal burden along with Rule 23(b).  (*Infra* 18-20).  Defendants are again unable to cite a single contrary case.

Plaintiffs' Motion for Class Certification should be granted in its entirety.

## II.   LEAD COUNSEL ARE ADEQUATE; DEFENDANTS AND THEIR COUNSEL MISREPRESENT THE RECORD

As a matter of fact, Defendants' arguments for finding Lead Counsel inadequate are frivolous.  (*Infra* II-A, B & C).

Additionally, Defendants do not acknowledge the actual, demanding legal standard for inadequacy.   Lead Counsel here are adequate simply because, consistent with the Ninth Circuit's requirements, they (i) have no conflicts of interest and (ii) are prosecuting this action vigorously – points that Defendants do not dispute.  (Motion at 13-14).

Courts roundly reject, as a matter of law, the one ground that Defendants proffer to demonstrate inadequacy – purported improper conduct involving the investigation of CWs and related pleadings.   Repudiating that precise challenge to class certification based on lead counsel's "use of information obtained from the Quoted Former Employees [CWs]," the *In re Pfizer Inc. Sec. Litig.* court ruled, "*[w]hen assessing the adequacy of counsel, courts are generally skeptical of defendants' ethical attacks on class counsel*."  282 F.R.D. 38, 47-48

(S.D.N.Y. 2012) ("It is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class and represent its interests."). *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755, at *7, n.8 (S.D.N.Y. Apr. 29, 2011), *aff'd*, 2011 WL 2471267 (S.D.N.Y. June 21, 2011) (same).

Defendants do not cite a single case finding lead counsel inadequate based on their investigation of CWs or related pleadings – though such attacks are a common defense tactic. Defendants' cases instead show the high burden for finding lead counsel inadequate on ethics grounds, which generally involve conduct that implicates the adequacy requirements of loyalty or vigorous prosecution, and ultimately turn on such extreme misconduct as obstruction of justice or a repeated pattern of violations over the course of one or more actions.[2]

Indeed, courts regularly reject sanctions for lead counsel purportedly "concocting" CW allegations, and note that a sanction amounting to termination is "so harsh a remedy that it should be imposed only in the most extreme circumstances." *Dynex*, 2011 WL 2581755, at *2-3. Even where defendants submitted recanting declarations from *six* of nine CWs, they could not satisfy the threshold showing that lead counsel "sentiently" schemed to defraud the court by "clear and convincing evidence," given factors that would apply here, too – including

---

[2]    *See In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 408 (D. Mass. 2007) (counsel inadequate because of indictment); *Victorino v. FCA US LLC*, 322 F.R.D. 403, 410 (S.D. Cal. 2017) (counsel adequate despite failure to communicate settlement offer); *White v. Experian Info Sols.*, 993 F. Supp. 2d 1154, 1173-74 (C.D. Cal. 2014) (counsel adequate despite potential conflict); *Lou v. Ma Labs., Inc.*, No. C 12-05409, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014) (counsel inadequate because of conflict); *Wrighten v. Metro Hosps., Inc.*, 726 F.2d 1346, 1351-52 (9th Cir. 1984) (counsel inadequate for failure to prosecute and related discovery violations); *Varela v. Indus. Prof. and Tech. Workers*, No. C 08-1012, 2009 WL 10670788, *4-5 (C.D. Cal. Oct. 28, 2009) (counsel inadequate for repeated pattern of misconduct over multiple cases, including failure to disclose that misconduct); *Gbarabe v. Chevron Corp.*,  No. 14-cv-00173, 2017 WL 956628, at *35 (N.D. Cal. Mar. 13, 2017) (counsel inadequate for failure to prosecute); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (ruling that adequacy standard must ensure counsel will not "sell out the class"); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510-11 (N.D. Ill. 1990) (counsel inadequate for not correcting the record when, as he knew, plaintiff repeatedly lied); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 578-79 (C.D. Cal. 2007) (counsel inadequate for repeated pattern of misconduct, including failure to prosecute and causing plaintiffs to make numerous misrepresentations); *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026, 2013 WL 3187410, at *14-15 (N.D. Cal. June 21, 2013) (counsel inadequate for repeated pattern of misconduct over multiple cases, including failure to prosecute and sweeping misrepresentations).

LEAD PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES – CASE NO. 3:15-CV-01455-VC

1    conflicting evidence from the plaintiffs, plausible indications that the CWs may have changed

2    their stories after talking to the defendants, and that the entire inquiry overlaps with the jury

3    question of whether the underlying fraud occurred.  *Id.* at *2-5.

4         The one case Defendants cite in which a court imposed monetary sanctions only

5    demonstrates that they cannot meet their heavy burden.  It involved drastic *undisputed* facts –

6    lead counsel ignoring red flags regarding a CW's "reliab[ility]" raised by the investigator, and

7    their alleging that the CW had critical first-hand knowledge when he did not even work at the

8    defendant company during the class period – which, tellingly, Defendants never detail.  *City of*

9    *Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 176-78 (N.D. Ill. 2014).[3]

10        **A.    Defendants' Willful Misrepresentations Regarding the CW5 Allegations**

11        The SAC is accurate.  Indeed, Mr. Ober confirmed the accuracy of the allegations

12   attributed to him.  ███████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████   Although Defendants have now combed through

15   Plaintiffs' investigative file for ***all six*** of the CWs, they are still unable to conjure up more than

16   a few purported discrepancies between the CW allegations and that file – and still only relating

17   to Mr. Ober.  The most charitable explanation of Defendants' misguided strategy would be that

18   they decided to take a stab at nitpicking, and hope that the Court will view this as a renewed

19   motion to dismiss, which it is not.

20        ***1. Paragraph 53 of the SAC does not mischaracterize Mr. Ober's statements regarding***

21   ***Fusion-io's 4Q-2014 internal revenue miss***.  (Opp'n at 10).  That Mr. Ober made the

22   statements included in ¶53 is incontrovertible.  Mr. Ober has never purported to recant anything

23   in ¶53 – ███████████████████████████████████████████████

24

25

---

26   [3]    If the Court denies class certification on account of Lead Counsel's adequacy, that
     would, likely, as a practical matter end this case for almost if not all Class members.  Their
27   individual damages, though significant, are not sufficient relative to the litigation costs.
     (Motion at 22).

28

4

1  ██████████████████████████████████████████████████████████

2  ████████  (*See* Exs. A-C; Ex. 12 to Petrocelli Decl., ECF No. 217-1).  That settles the issue.

3       As Defendants cannot claim that the SAC fabricates Mr. Ober's statements, they merely

4  argue that Fusion-io may not have performed quite as badly as Mr. Ober stated – but that does

5  not make Lead Counsel inadequate.  ████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████ █ ██████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████, the day that Mehrotra fraudulently told the market, among other things, that

20 Enterprise would "certainly" reach $1 billion in revenue, thanks to strong contributions from

21 Fusion-io.[5]

22 _____

23 [4]     Defendants' attempt to minimize the significance of Fusion-io's 4Q-2014 miss as a "fraction" of what Mr. Ober recalled is deeply disingenuous. █████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████

26 [5] ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████



5     Defendants' complaint that Mr. Ober did not create Fusion-io's revenue forecasts is a straw

6     man. (Opp'n at 11). The SAC never alleges as much, and he did not need to create them to

7     have knowledge of them.

19         Finally, Plaintiffs had corroborating information for ¶53, tending to confirm the

20     accuracy of its allegations. As the MTD Order (at 2-3) notes, Defendants admitted after the

21     Class Period that they saw Fusion-io sales fall by 4Q-2014. ¶121; *see also* ¶125. Additionally,

22     CW1 stated that it became apparent by 4Q-2014 that Fusion-io's products were too expensive to

23     compete with cheaper alternatives (¶60); and, as the MTD Order (at 2-3) also notes, CW1

24     explained that SanDisk's public financial statements concealed Enterprise's poor performance

25     (¶62).

**2. The SAC does not mischaracterize Mr. Ober's role at SanDisk.**  (Opp'n at 12-13). Defendants' issue with ¶43 depends on a contrived reading of one line, designed to manufacture a "mischaracterization" where none exists.  Specifically, Defendants suggest that ¶43 is alleging that Mr. Ober had ultimate responsibility for Fusion-io product development.  Nothing like that appears in the SAC – it never states that Mr. Ober was involved with engineering, managing individual products, managing employees or making final decisions.  Instead, ¶43 characterizes Mr. Ober's role in product development as "working on PCIe product roadmaps."  Mr. Ober has never denied that he worked on roadmaps (*see*, *e.g.*, Ex. C), which refers to the features that each successive generation of a product have, and which by definition encompasses how products develop. ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

In any event, Defendants' over-arching point seems to be implying that Mr. Ober was not well-positioned to have knowledge of the subjects in the SAC. ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

**3. The SAC does not mischaracterize Mr. Ober's statements regarding regular meetings at which Defendants received Enterprise and Fusion-io sales data.**  (Opp'n at 13-14).  Paragraph 53 alleges that the Enterprise General Manager "informed [Mr. Ober] that he reviewed the sales results [for Enterprise and Fusion-io] at the regular meetings discussed above in which Mehrotra and Bruner participated."  Again, Mr. Ober has never purported to recant any allegations in that paragraph.  (*Supra* 4-5).  Moreover, CW6, who has never purported to recant anything (despite being contacted by Defendants) corroborated that specific allegation, and described the same regular meetings, wherein his direct report, the SVP of Commercial Sales,

1  would also "meet with Mehrotra and other C-level executives to discuss sales figures for the

2  enterprise segment." ¶56.  Even Defendants conceded that regular meetings at which senior

3  executives receive sales figures are such a common corporate practice that they are

4  "unremarkable" (ECF No. 150 at 5), ███████████████████████████

5  ███████████████████████████████████   ████████████

6  ████████████████   Any of the foregoing facts alone, and especially taken together,

7  demonstrate the accuracy of the SAC's executive meetings allegations.

8         Unable to mount a substantive attack, Defendants attempt to relitigate the SAC's

9  reliance on Mr. Ober's secondhand knowledge of the executive meetings.  But the SAC

10 acknowledges as much, and the Court has already rejected that argument.  (MTD Order at 4)

11 ("although CW5's statements are based on hearsay[,] . . . the statements are supported by the

12 factual context").

13        Defendants' argument is even weaker on Class Certification, where they now recognize

14 that Mr. Ober in fact had "knowledge of these meetings," but argue that he never told Mr.

15 Vargas that Mr. Mehrotra attended them.  (Opp'n at 14).  However, a thorough review of the

16 evidence demonstrates that this is wishful thinking on Defendants' part.  ███████████

17 ████████████████████████████████████████████████

18 ███████████   ███████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 █████████████████████████████████

28

1        ***4. The SAC does not mischaracterize Mr. Ober's statements regarding his contacts***

2  ***with Mehrotra.*** ███████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████████████████████

16 ███████████████████████████████████████████████, settles the issue that the

17 SAC's corresponding allegations reflected his statements and were made in good faith.[6]

18 ███████████████████████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████████████████

20 ███████████████████████████████████████████████████████████████████████

21 ███████████████████████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████████████████████████t

26 ─────────────────

27 [6] ███████████████████████████████████████████████████████████████████

28 ███████████████████████████████████████████

9

1

2

3

4

5

6

7

8

9

10         **B.**     **Defendants' "Other Issues" Regarding Mr. Ober Are Meritless**

11

12

13

14

15

16

17

18

19

20

21

22

23

24       Further, the lone case Defendants rely on to support their argument, *In re Millennial*

25 *Media, Inc. Sec. Litig.*, is factually distinct, as it involved at least six CWs challenging the

26 accuracy of the statements attributed to them and lead counsel's subsequent voluntary

27 withdrawal of the complaint. No. 14-cv-7923, 2015 WL 3443918, at *12 (S.D.N.Y. May 29,

28

2015).  Other courts have recognized that what Defendants characterize as requirements for CW investigations, *Millennial* by its own terms characterizes as "best practices," and those courts have refused to follow *Millennial*. *E.g.*, *In re Symbol Techs., Inc. Sec. Litig.*, No. CV 05-3923, 2017 WL 1233842, at *13 (E.D.N.Y. Mar. 31, 2017).[7]

   ***2. The recording issue is an irrelevant sideshow to distract from the merits.***  Unable to demonstrate that Plaintiffs "invent[ed]" Mr. Ober's statements, as they initially told the Court (ECF No. 150 at 12), Defendants have pivoted to suggesting that Plaintiffs' investigator violated Cal. Penal Code §632.7.  This Court should decline Defendants' invitation to be dragged into that irrelevant sideshow.  As an initial matter, it is deeply ironic that after spending the bulk of their Opposition in an unsuccessful effort to use the recordings to their benefit, Defendants argue in the alternative that, if the Court disagrees with their efforts, it should launch an inquiry into whether the recordings violated §632.7.  Indeed, Defendants' ploy to appoint themselves private attorney general on this issue, where they have suffered no injury, ▇

▇

▇

   It would also require the Court to sift through complex legal issues that are wholly irrelevant to this securities fraud class action and that are not as settled as Defendants would have the Court believe.  Contrary to their claim that §632.7 clearly prohibits recordings of cellular phone calls absent permission from all parties to a call, several courts have recently reached the opposite conclusion.  They hold that §632.7 only applies to ***third parties*** that intercept a cellular call and does not prohibit a participant to such a phone call from recording

---

[7] ▇

it.[8]  *Granina v. Eddie Bauer LLC*, No. BC569111, 2015 WL 9855304, at *3 (Cal. Super. Ct. Dec. 2, 2015); *Young v. Hilton Worldwide, Inc.*, No. 2:12-cv-01788, 2014 WL 3434117, at *1 (C.D. Cal. July 11, 2014).

Defendants offer no explanation why ████████████████████████████ ████████████████████████████  Plaintiffs have already produced ***all*** of their work product material regarding their communications with CWs, which they were not obligated to do, to demonstrate that the SAC's CW allegations were not "invented."[9]  Nothing more is required to rebut Defendants' frivolous claims that Lead Counsel are inadequate.

Courts have rejected defendants' attempts to drag them into such ancillary issues.  For example, when confronted with a request to impose terminating sanctions for a plaintiff's failure to disclose a recording that violated §632, Judge Koh refused to do so.  *Silva v. TEKsystems, Inc.*, No. 12-CV-05347, 2013 WL 3939500, at *1-2, *4 n.2 (N.D. Cal. July 25, 2013) (also unnecessary to determine whether the recording was inadmissible under §632(d)). Likewise, *Symbol Techs.* refused to grant the defendants' discovery requests "focusing strictly on certain actions (or inactions) taken by Plaintiff's counsel in conjunction with their [CW] investigation."  2017 WL 1233842, at *13.  It found, significantly, that "whether Plaintiff's counsel and its investigator may have run afoul of ethical duties when conducting the investigation (and the Court takes no position on this issue) is wholly divorced from the subject matter and claims in the underlying action."  *Id.*

***3. Defendants' complaints of cherry-picking are deeply hypocritical.***  As explained herein, the Declaration Defendants drafted for Mr. Ober, and their arguments in the Opposition, depend almost entirely on taking his statements out of context. Perhaps that is why Defendants note that doing so is not "improper."  (Opp'n at 18).  More fundamentally, if Defendants believe

---

[8]     It does not appear that Defendants are suggesting there was a violation of Cal. Penal Code §632, because that provision only applies to "confidential communications," and they do not argue that Mr. Ober's statements so qualify.  Moreover, that would simply add another complex issue for the Court to sift through.

[9]     *E.g.*, *Hatamian v. Adv. Micro Devices, Inc.*, No. 14-cv-00226, 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016).

12

1    that their own conduct with respect to Mr. Ober was proper, which it was not (*infra* II-C), their

2    argument that Lead Counsel should be disqualified for cherry-picking necessarily fails.

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ██████████████████████████████████

15       Defendants' purported celebration of Fusion-io's "c[o]me back" and SanDisk's

16   "success" after the Class Period ended is a prime example of how their entire position depends

17   on taking information out of context.  (Opp'n at 18).  As a threshold matter, even if this were

18   true, it would just be a distraction from the relevant facts – this case is about Defendants' refusal

19   to acknowledge Enterprise's and Fusion-io's substantial problems ***during the Class Period*** –

20   not about what happened several quarters later.  Indeed, by the time SanDisk reported this

21   supposed  "success," in January 2016, Defendants had already been forced to sell SanDisk the

22   previous quarter, reflecting Enterprise's poor performance.  (¶128.)

23       But there was no such success.  Eighteen months after its acquisition, Fusion-io was still

24   not at its pre-acquisition run rate, hardly a "come back."  (Ex. 22 to Petrocelli Decl., ECF No.

25   217-1 ("Revenue from our Fusion-io reached a ***post-acquisition*** record in the fourth quarter" of

26   2015")).  Moreover, Enterprise's revenue fell sequentially from 1Q-2015 to 2Q-2015, as well as

27   from 2Q-2015 to 3Q-2015, and came in hundreds of millions of dollars short of Mehrotra's $1

28

LEAD PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES – CASE NO. 3:15-CV-01455-VC

1    billion revenue guarantee for 2015.  (*See* Ex. X at *6 (attachment to Ex. 22 of Petrocelli Decl.,

2    ECF No. 217-1); *see also* ¶127).

3        **C.    Defense Counsel's Improper Conduct Involving Mr. Ober**

4        The Court previously found that, in filing the Declaration, Defense Counsel's conduct

5    was "improper" and a "ruse . . . in the hope it will influence the decision on dismissal."  (ECF

6    No. 171 at 3-4).



### D. Discovery Confirms the SAC's Accuracy

The discovery documents Plaintiffs cite are not just relevant to commonality, as Defendants concede (Opp'n at 19), but also evidence of the SAC's accuracy, as they corroborate its fraud allegations and align with Mr. Ober's statements to the investigator (*supra* II-A). That is ultimately why Defendants offer no response, their various excuses notwithstanding. (Opp'n at 19-20). Indeed, after producing all of their own CW

15

LEAD PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES – CASE NO. 3:15-CV-01455-VC

1  communications, reviewing Defendants' production, and listening to Mr. Ober's deposition

2  testimony, Plaintiffs did not expect that Defendants would make the arguments that appeared in

3  their Opposition regarding Mr. Ober.  Defendants' specious request for a sur-reply, if it comes,

4  should be denied.

5  **III.   LEAD PLAINTIFFS ARE ADEQUATE**

6        Lead Plaintiffs easily meet Rule 23's modest adequacy requirements.  (Motion at 12-14).

7        *1. Defendants' primary argument challenging Rule 23(a)(4), that Lead Plaintiffs have*

8  *failed to "actively supervise the lawsuit," fails as a matter of fact and law.*  As explained

9  (Motion at 13), Lead Plaintiffs have actively supervised the lawsuit through frequent

10  consultation with counsel, review of filings and active participation in discovery.[11]  They have

11  also shown themselves to be familiar with the allegations in the case, and to have effectively

12  undertaken their duties as Class Representatives.[12]  Accordingly, they are more than adequate.

13  *E.g.*, *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920, 2016 WL 7425926, at *7 (N.D. Cal.

14  Dec. 22, 2016); *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2017 WL 4750629, at *7

15  (N.D. Cal. Oct. 20, 2017).

16        Effectively conceding, as they must, that Lead Plaintiffs are individually adequate,

17  Defendants retreat to the illogical position, unsupported by any caselaw, that Lead Plaintiffs

18  have somehow become inadequate in the aggregate.[13]  This depends on misconstruing a

19  declaration in which Lead Plaintiffs described certain procedures for prosecuting the case.

20

---

21  [11]     (Exs. Z at 10:7-18, 11:17-13:11, 27:23-29:9, 119:17-120:4, 128:20-129:4; AA at 12:8-
13:11, 108:6-8, 109:2-5, 115:6-16, 119:3-16; BB at 106:3-12, 107:11-18, 109:19-23, 110:11-16,
22  111:23-25, 113:20-22; CC at 20:24-21:3, 27:18-24, 46:10-14, 113:15-23, 119:24-120:3, 122:1-
10; DD at 11:21-13:12, 31:3-6, 32:17-33:13, 112:17-113:8, 114:2-4, 163:9-18; EE).
23  [12]     (Exs. Z at 20:9-14, 112:19-113:20, 121:6-122:18, 157:22-158:12, 164:7-165:4; AA at
15:23-16:10, 64:20-64:22, 102:9-104:2, 103:22-104:2, 104:18-24, 104:25-105:16, 116:10-
24  117:16, 120:4-121:6; BB at 19:8-14, 104:11-105:9, 112:2-13, 124:12-16, 127:18-128:14, 129:4-
10; CC at 18:25-19:2, 114:18-116:14, 124:12-16, 127:18-128:14; 129:18-25; DD 23:10-14,
25  124:2-10, 125:1-3, 145:12-17, 146:20-147:16, 147:21-148:3, 153:21-25, 154:1-19, 173:6-22,
174:2-4; EE).
26  [13]     The only case Defendants found in which the lead plaintiff was ruled inadequate was
27  because he had insufficient knowledge of the case.  *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307
(E.D. Va. 2007).
28

1    Defendants' complaint that there has not been oversight simply because of a lack of joint

2    conference calls ignores Lead Plaintiffs' actions described above.   It also ignores their

3    testimony that: there has been no need for such a call, since the case involved purely legal

4    milestones, and each Lead Plaintiff could – and did – separately review filings, prepare for

5    depositions, stay abreast of the events in the action, and communicate through their attorneys.[14]

6    Likewise, Defendants' claim that Lead Plaintiffs have purportedly not made "decisions,"

7    actually refers to Lead Plaintiffs relying on counsel's strategic legal advice, which they – and all

8    clients – are entitled to do, and which in no way makes them inadequate.   *See In re DJ*

9    *Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238, 2003 WL 27363735, at *6 (S.D. Cal. Nov. 17,

10   2003); *N.J. Carpenters' Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2011 WL

11   3874821, at *4 (S.D.N.Y. Aug. 16, 2011); Ex. Z at 40:12-41:1 (Defendants asking Lead

12   Plaintiff about decisions concerning litigation strategy, how to respond to discovery requests,

13   and when to file motions).[15]

14         ***2.   The indemnification provisions that Defendants point to do not render***

15   ***Massachusetts Laborers or NNERF inadequate.***   Again, Defendants do not cite any authority

16   supporting their position.[16]   Further, Defendants' references to the PSLRA's legislative history

17   ignore the relevant section, which makes clear the payment prohibition's purpose: was to

18   "reform abuses involving the use of 'professional plaintiffs'" who are "compensat[ed] in the

19   form of ***bounty payments or bonuses***" and motivated thereby.   *See* H.R. Conf. Rep. No. 104-

20   369, at *32-33 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 732 (1995); *In re Extreme*

21   *Networks Inc. Sec. Litig.*, No. 15-cv-04883, 2016 WL 3519283, at *6 (N.D. Cal. June 28, 2016).

22

23   ───────────────

[14]       (*E.g.* Exs. Z at 129:20-130:5; AA at 114:11-115:5, 115:22-116:3).

24
[15]       Defendants also fault Lead Plaintiffs for purportedly not monitoring litigation costs,

25   though the only case they cite does not address that issue.   *Williams Corp. v. Kaiser Sand &*
     *Gravel Co., Inc.*, 146 F.R.D. 185, 187-88 (N.D. Cal. 1992) (finding lead plaintiff adequate).

26   [16]       The two cases Defendants cite do not involve the PSLRA or Rule 23, and merely note
     that indemnification provisions may have value in certain other circumstances.   *Mola Dev.*
27   *Corp. v. Orange Cty. Assessment Appeals Bd. No. 2*, 80 Cal. App. 4th 309, 320 (2000) and *DSC*
     *Commc'ns Corp. v. Next Level Commc'ns*, 929 F. Supp. 239, 246-47 (E.D. Tex. 1996).

28
─────────────────────────────────────────────────────
                                        17

Indemnification provisions like those at issue can hardly be considered prohibited payments – they involve no exchange of money to entice investors.  The PSLRA was enacted to encourage large institutional investors like Massachusetts Laborers and the NNERF to serve as lead plaintiff.

*3. Defendants' argument that filing PSLRA certifications with minor errors renders two Lead Plaintiffs inadequate fails*.  Courts addressing this precise issue of PSLRA certifications that "inadvertent[ly]" contain "minor" mistakes hold that it does not impact adequacy.  *E.g.*, *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017); *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146, 2017 WL 2039171, at *9 (C.D. Cal. May 11, 2017).  Moreover, the NNERF's and Pavers' losses actually *increased* with the inclusion of the additional transactions, so there is no bad faith, or prejudice to Defendants or the lead plaintiff process.  (*See* Exs. FF; GG).  Once the NNERF and Pavers learned of the unintentional errors, they promptly provided Defendants with a corrected list of their Class Period transactions, and did so weeks before the depositions of their representatives.  *Id.*  This is sufficient.  *See In re FirstPlus Fin. Grp., Inc. Sec. Litig.*, No. Civ.A.3:98-CV-2551, 2002 WL 31415951, at *7 (N.D. Tex. Oct. 28, 2002).

## IV.   PLAINTIFFS' OUT-OF-POCKET DAMAGES METHODOLOGY EASILY SUPPORTS PREDOMINANCE

"[A]mple legal precedent" from securities fraud cases establish that the standard "out-of-pocket" damages methodology that Lead Plaintiffs invoke easily supports predominance, under *Comcast* and Rule 23(b)(3).  *E.g.*, *Intuitive Surgical*, 2016 WL 7425926 at *17; *Hatamian v. Adv. Micro Devices, Inc.*, No. 14-cv-00226, 2016 WL 1042502, at *8-9 (N.D. Cal. Mar. 16, 2016); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016); (Motion at 22-23).  Indeed, Lead Plaintiffs are unaware of any contrary authority, and Defendants do not cite any.  Thus, there can be no legitimate attack on the damages methodology or the predominance requirement here.

1    Defendants make no attempt to distinguish the foregoing precedent, and instead cite a

2    few stray lines from two unrelated cases,[17] which they use to exaggerate *Comcast*'s standard.

3    (Opp'n at 23-24).  In fact, as the Ninth Circuit has held, *Comcast* only asks plaintiffs to "show

4    that their damages stemmed from the defendant's actions that created the legal liability."  *Leyva*

5    *v. Medline Indus. Inc*., 716 F.3d 510, 513-14 (9th Cir. 2013) ("damage calculations alone cannot

6    defeat predominance.").  When that requirement is coupled with the fact that "[i]ssues and facts

7    surrounding damages have rarely been an obstacle to establishing predominance in section

8    10(b) cases," it means that in a securities fraud class action invoking the out-of-pocket

9    methodology like this one, the "scrutiny required under *Comcast* and Rule 23(b)(3)" for a

10    damages methodology to support predominance is "minimal."  *Carpenters Pension Trust Fund*

11    *of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 74, 99 (S.D.N.Y. 2015).

12    Significantly, in turn, courts have regularly found that reports from Mr. Coffman that are

13    materially identical to the one at issue here with respect to damages establish predominance and

14    satisfy the minimal *Comcast* burden.  *E.g.*, *Intuitive Surgical*, 2016 WL 7425926, at *17;

15    *Hatamian*, 2016 WL 1042502, at *8-9.  Both Mr. Coffman and Lead Plaintiffs repeatedly state

16    that the liability theory here is that Defendants' false and misleading statements artificially

17    inflated SanDisk's stock price.  (*E.g.*, Coffman Rept. at ¶¶77-78 (ECF No. 210-2); Motion at

18    22-23; Ex. HH at 86:25-87:2 ("I understand [Lead Plaintiffs are] proceeding on the basis of

19    there being artificial inflation in the stock.")).[18]  That is precisely the theory of liability that the

20    out-of-pocket damages methodology measures.  *Id.*

21

22

23    [17]    First, *Longest v. Green Tree Servicing LLC*, does not even involve securities fraud.  308
      F.R.D. 310, 333 (C.D. Cal. 2015).  Second, the *In re BP p.l.c. Sec. Litig.* court, subsequent to
24    the opinion Defendants cite, clarified that the action involved two sub-classes, and approved the
      out-of-pocket methodology for the sub-class relying on an artificial inflation liability theory,
25    while rejecting a non-standard damages methodology for the sub-class relying on a different
      liability theory.  No. 4:10-md-2185, 2014 WL 2112823, at *12, 14 (S.D. Tex. May 20, 2014).

26    [18]    Defendants' unfounded claim that Mr. Coffman was not clear on the liability theory is
      based on his responses to two of their questions regarding economic concepts that, as he
27    testified, are consistent with Lead Plaintiffs' artificial inflationary theory of liability, and that at
      this point have no basis in the record.  (Ex. HH at 80:23-82:13; 86:18-88:24).

28

19

1    Finally, contrary to Defendants' unsupported criticism that Mr. Coffman does not

2  explain how he will "perform his analysis" (Opp'n at 24), "[t]he Court need not 'decide the

3  precise method for calculating damages at [class certification],' but rather must find 'that

4  calculation of damages will be sufficiently mechanical that whatever individualized inquiries

5  need occur do not defeat class certification.'" *E.g.*, *Silver Wheaton*, 2017 WL 2039171, at *14;

6  *Hatamanian*, 2016 WL 1042502, at *9 (finding these arguments impermissibly challenge "loss

7  causation" at class certification and that "damages could be feasibly and efficiently calculated

8  once the common liability questions are adjudicated").  Courts have likewise found that at this

9  stage a damages methodology need not "account for variations in inflationary impact over

10  time."  *Barclays*, 310 F.R.D. at 99-100.  Consistent with this precedent, the Coffman report

11  establishes predominance.

12  **V.     THE COURT SHOULD NOT MODIFY THE CLASS DEFINITION**

13    There is no need to modify the class definition to exclude shareholders who sold their

14  shares before the first corrective disclosure, and shareholders who purchased after the first

15  corrective disclosure but sold before the second corrective disclosure, on the ground that they

16  cannot prove damages.  (Opp'n at 25).  That argument is "deflected by [a] class definition itself

17  that only includes those who acquired [securities] during the class period and '***who were***

18  ***damaged thereby***,'" because "[i]f an investor cannot prove damage, it is not a class member by

19  definition."  *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 649 (N.D. Ala. 2009)

20  (emphasis in original); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017, 2013 WL

21  440622, at *1 (S.D.N.Y. Jan. 23, 2013).  The class definition is so limited.  (Motion at 9).[19]

22  **VI.    CONCLUSION**

23    Accordingly, the Court should grant the Motion for Class Certification in full.

24

25  _____
[19]      Excluding Pavers and Road Builders Annuity Fund from the Class at this juncture is
26  premature.  *See In re Tyco Int'l, Ltd.*, 236 F.R.D. 62, 71 (D.N.H. 2006); *In re DVI Inc. Sec.*
*Litig.*, 249 F.R.D. 196, 219 (E.D. Penn. 2008).  Moreover, the Annuity Fund is one of three
27  separate funds at Pavers and Road Builders that is serving as Lead Plaintiff and should the
Court exclude the Annuity Fund, the remaining two funds would remain members of the Class.
28

LEAD PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES – CASE NO. 3:15-CV-01455-VC

| | |
|---|---|
| 1 | Dated: March 21, 2018 |
| 2 | |

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: ___/s/ Deborah Clark-Weintraub_____
DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
MAX SCHWARTZ (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
Email:  dweintraub@scott-scott.com
            mschwartz@scott-scott.com

JOHN T. JASNOCH (Bar No. 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
Email: jjasnoch@scott-scott.com

JONATHAN GARDNER (*pro hac vice*)
CAROL C. VILLEGAS (*pro hac vice*)
ROSS M. KAMHI (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
Email: jgardner@labaton.com
            cvillegas@labaton.com
            rkamhi@labaton.com

STEVEN J. TOLL (*pro hac vice*)
ELIZABETH ANISKEVICH
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email: stoll@cohenmilstein.com
            eaniskevich@cohenmilstein.com

CHRISTOPHER LOMETTI (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile:  (212) 838-7745
Email: clometti@cohenmilstein.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the U.S. Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

Executed on March 21, 2018, at New York, New York.

 /s/ Deborah Clark-Weintraub
DEBORAH CLARK-WEINTRAUB