1  DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
   MAX R. SCHWARTZ (*pro hac vice*)
2  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
   The Helmsley Building
3  230 Park Avenue, 17th Floor
   New York, NY 10169
4  Telephone: (212) 223-6444
   Facsimile:  (212) 223-6334
5  Email:  dweintraub@scott-scott.com
           mschwartz@scott-scott.com
6
   *Attorneys for Class Representatives and the Class*
7
   [Additional counsel on signature page.]
8

9              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
10                **SAN FRANCISCO DIVISION**

11  IN RE: SANDISK LLC SECURITIES          Case No. 3:15-cv-01455-VC
    LITIGATION
12                                          Hon. Vince Chhabria

13                                          **CLASS REPRESENTATIVES' NOTICE
                                            OF MOTION AND MOTION FOR
14                                          FINAL APPROVAL OF CLASS
                                            ACTION SETTLEMENT AND PLAN OF
15                                          ALLOCATION; MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
16                                          SUPPORT THEREOF**

17                                          Date:     September 26, 2019 at 10:00 a.m.
                                            Dept.:    Courtroom 4, 17th Floor
18                                          Judge:  Hon. Vince Chhabria

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.      PRELIMINARY STATEMENT ......................................................................... 2

II.     STATEMENT OF FACTS .................................................................................. 3

III.    ARGUMENT ...................................................................................................... 5

        A.      The Settlement Merits Final Approval by the Court ............................... 5

        B.      Establishing a Presumption of Reasonableness, the Settlement Is a Product of Arm's-Length Negotiations Conducted by an Experienced Mediator .................................................................................. 6

        C.      The *Hanlon* Factors Support Final Approval........................................... 6

                1.      The Amount Offered in the Settlement Is Substantial ................. 6

                2.      The Strength of the Class Representatives' Case Balanced Against the Substantial Risks of Continued Litigation................ 7

                3.      The Complexity of Further Litigation, Advanced Stage of the Case, View of Experienced Counsel, and Other *Hanlon* Factors Support the Settlement ........................................ 9

                4.      The Reaction of the Class to the Proposed Settlement ............... 11

        D.      The Rule 23(e)(2) Factors Support Approval ........................................ 12

                1.      Class Representatives and Class Counsel Have Adequately Represented the Class............................................... 12

                2.      The Relief Provided Is Adequate Relative to the Effectiveness of the Proposed Distribution Methodology, Attorneys' Fees Requested, and Any Agreement Made in Connection with the Proposed Settlement .................................. 12

                3.      The Settlement Treats Class Members Equitably Relative to Each Other ............................................................................... 13

        E.      The Plan of Allocation Is Fair and Reasonable ..................................... 14

        F.      The Notice Procedure Satisfied Due Process.......................................... 14

IV.     CONCLUSION.................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

PAGE(S)

3

CASES

4

*In re Atmel Corp. Deriv. Litig.,*
    No. C 06-4592 JF (HRL), 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ............................ 6

5

6

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 247 (N.D. Cal. 2015) ................................................................................................. 9

7

*In re Broadcom Corp. Sec. Litig.,*
    No. SACV 01-275 DT (MLGx), 2005 WL 8152913 (C.D. Cal. Sept. 12, 2005) ................ 14

8

*Brown v. China Integrated Energy Inc.,*
    No. CV 11-02559 BRO, 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ............................. 12

9

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ...................................................................................................... 15

10

11

*City of Providence v. Aeropostale, Inc.,*
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................ 8

12

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................... 14

13

14

*Cotter v. Lyft, Inc.,*
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..................................................................................... 5

15

*Eisen v. Porsche Cars N. Am., Inc.,*
    No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ................... 11

16

17

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................................... 10

18

*Feyko v. aAd Partners LP,*
    No. LACV 11-05511 DDP (PJWx), 2014 WL 12572678 (C.D. Cal. Mar. 7, 2014) .............. 6

19

20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................................*passim*

21

*Hartless v. Clorox Co.,*
    273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ................ 9

22

23

*Larsen v. Trader Joe's Co.,*
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................ 9

24

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ................................................................................................7, 9

25

26

*McPhail v. First Command Fin. Planning, Inc.,*
    No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................... 6

27

28

ii

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:15-CV-01455-VC

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................ 7, 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).................................7

*Moore v. PetSmart, Inc.*,
    No. 5:12-cv-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015)............................ 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................ 5, 6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................... 5, 7, 10

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) ................................ 12

*Pierce v. Rosetta Stone, Ltd.*,
    No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)........................... 10, 11

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................................ 8

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ...................................................................... 15

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA, 2013 WL 12303367 (C.D. Cal. July 9, 2013) ................................ 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................... 9, 10

*Satchell v. Fed. Express Corp.*,
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..................................... 6

*In re Toys "R" Us-Del., Inc. FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 6

**STATUTES, RULES & REGULATIONS**

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 23(c)(2)(B)............................................................................................ 14
    Rule 23(e)(2)(C)(ii)........................................................................................ 12
    Rule 23(e)(2)(C)(iii)....................................................................................... 13
    Rule 23(e)(2)(C)(iv)....................................................................................... 13
    Rule 23(e)(3) ............................................................................................... 13

iii

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND COUNSEL OF RECORD

PLEASE TAKE NOTICE that on September 26, 2019, at 10:00 a.m., or at such other time as may be set, in Courtroom 4 of the U.S. District Court for the Northern District California, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Class Representatives,[1] on behalf of the certified Class,[2] will, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully move the Court to grant final approval of the Settlement and Plan of Allocation, find the Settlement Notice provided to the Class has satisfied due process, enter the proposed Final Order and Judgment (ECF No. 271-1 at Ex. B), and dismiss this Action with prejudice.

This motion is based upon the following memorandum in support; the Declaration of Deborah Clark-Weintraub in Support of Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for Award of Attorneys' Fees, Payment of Litigation Expenses, and Reimbursement of Class Representatives' Costs and Expenses ("Weintraub Decl."), dated August 22, 2019, with annexed exhibits;[3] the Stipulation; all of the prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the preliminarily approved $50 million Settlement of this Action is fair, reasonable, and adequate under Rule 23(e) and should be granted final approval;

---

[1]     City of Bristol Pension Fund ("Bristol"), City of Milford, Connecticut Pension & Retirement Board ("Milford"), Pavers and Road Builders Pension, Annuity and Welfare Funds ("Pavers and Road Builders Benefit Funds"), the City of Newport News Employees' Retirement Fund (the "NNERF"), and Massachusetts Laborers' Pension Fund ("Massachusetts Laborers") together are the Class Representatives or Lead Plaintiffs.

[2]     Unless otherwise defined herein, all capitalized terms have the same definitions as set forth in the Revised Stipulation and Agreement of Settlement (the "Stipulation"), dated as of May 20, 2019, previously filed with the Court (ECF No. 274-1).

[3]     The Weintraub Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the: history of this Action; nature of the claims asserted; negotiations leading to the Settlement; and risks and uncertainties of continued litigation, among other things.

2.      Whether the Plan of Allocation for the distribution of the proceeds of the Settlement is fair, reasonable, and adequate, and should be finally approved by the Court; and

3.      Whether Notice satisfied the due process rights of the Class and complied with Rule 23(e).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

Class Representatives have reached a proposed Settlement of all claims asserted in the Action against Defendants for $50 million in cash.  The proposed Settlement represents an exceptional result for the Class.  The Settlement provides a considerable benefit to the Class by conferring a substantial, certain, and immediate recovery while avoiding the significant risks and expense of continued litigation, including the risk that the Class could recover nothing or substantially less than the Settlement Amount after years of extensive litigation and delay.

As explained in the Motion for Preliminary Approval of Class Action Settlement (ECF No. 270) ("Preliminary Approval Motion") and Weintraub Declaration submitted herewith, both of which are incorporated herein by reference, the Settlement represents a very substantial percentage of the Class' likely recoverable damages.  Class Representatives' expert estimated maximum damages here were approximately $361 million, assuming they prevailed on all contested issues of liability, causation, and damages.  Alternatively, if accepted by a jury, the analysis of Defendants' expert would have resulted in maximum damages of approximately $85 million at best, although Defendants resolutely maintained Class Representatives would be unable to prove liability and, therefore, that there were no damages.  Thus, using the maximum damages figures, the $50 million Settlement represents from 14% to 58% of the amount that might be proved at trial, which far exceeds the usual recovery in securities class action cases.

Importantly, when the Settlement was reached, Class Representatives and Class Counsel were well-informed of the strengths and weaknesses of their claims.  The Settlement was achieved after three years of fierce litigation over whether SanDisk misled its investors about the health and prospects of its enterprise business and efforts to integrate its latest enterprise acquisition,

2

1    Fusion-io.  Notably, the Parties agreed to the Settlement terms only after: (i) the Court denied

2    Defendants' motion to dismiss the SAC; (ii) the Parties had completed comprehensive class, fact,

3    and expert discovery; (iii) the Court certified the Class; (iv) principal summary judgment and

4    *Daubert* briefing had been completed; (v) pretrial preparations had begun for a trial scheduled to

5    start in three months' time; and (vi) the Parties had engaged in multiple private mediations.

6    　　　　The Stipulation was negotiated at arm's-length with the assistance of a distinguished and

7    experienced mediator: Hon. Layn R. Phillips, U.S. District Judge (Ret.).  The resulting Settlement

8    unquestionably confers valuable monetary relief to the Class.  Indeed, it is particularly impressive

9    when viewed against the uncertainty of summary judgment proceedings and then the myriad risks,

10   delays, and hurdles of a trial had the litigation continued.

11   　　　　In view of the foregoing, for the reasons set forth in the Preliminary Approval Motion and

12   Weintraub Declaration, and as summarized herein, Class Representatives respectfully submit that

13   the Settlement is fair, reasonable, and adequate and satisfies the standards of Rule 23.

14   Accordingly, Class Representatives respectfully request that the Court grant final approval of the

15   Settlement, find the Plan of Allocation a fair and reasonable method for distributing the Net

16   Settlement Fund, and find that the Notice program undertaken pursuant to the Preliminary

17   Approval Order satisfies due process.

18   **II.    STATEMENT OF FACTS**

19   　　　　The Class alleges that during the Class Period (October 16, 2014 through April 15, 2015),

20   Defendants misled investors concerning the health and prospects of SanDisk's enterprise

21   business, including the quality and breadth of its enterprise products and its success integrating

22   SanDisk's most recent enterprise acquisition, Fusion-io.  Weintraub Decl. ¶13.

23   　　　　Specifically, the Class alleges that although Defendants were touting the performance and

24   prospects of the enterprise business to investors, by the start of the Class Period, contrary to

25   Defendants' positive statements, SanDisk's enterprise business, including Fusion-io, was beset

26   with performance issues.  *Id.* ¶14.  For example, the Class alleges that Fusion-io had badly missed

27   the Company's internal sales forecasts in 4Q2014 and performed even worse in 1Q2015 and was

28

3

1   unable to integrate Fusion-io as planned.  *Id.*  The Class alleges that Defendants covered up this

2   information and made false and misleading statements when they: (i) claimed that Fusion-io's

3   revenue met their expectations; (ii) touted SanDisk's acquisition of Fusion-io as the reason the

4   Company would achieve $1 billion in enterprise revenue in 2015, a year ahead of schedule; and

5   (iii) lauded the "strong progress" they had made in integrating Fusion-io.  *Id.*

6       In addition, the Class alleges that by the start of the Class Period, SanDisk's "legacy"

7   enterprise business, which pre-dated the Fusion-io acquisition and consisted of products based on

8   previous acquisitions (of SMART Storage and Pliant), was also performing poorly due to designs

9   riddled with bugs, an inability to qualify those products with potential customers, and SanDisk's

10  consequent overreliance on outdated products, all of which had been adversely impacting sales.

11  *Id.* ¶15.  The Class alleges that Defendants covered up this information, and made false and

12  misleading statements when they claimed, even in the face of disappointing sales, that SanDisk's

13  enterprise business: (i) had an "industry-leading," "comprehensive" portfolio of enterprise

14  products with the "best capabilities" in the market; (ii) was without "a competitor that [could]

15  match up to the breadth of" its enterprise product line; (iii) had a "market leadership position,"

16  "momentum," and "strong demand signals" from customers "in all key product categories"; and,

17  among other things, (iv) was "firing on all cylinders."  *Id.*

18      The Class also alleges that, when Defendants made the false and misleading statements,

19  they were aware of the serious execution, qualification, revenue, and integration issues

20  undermining the prospects of the enterprise business through multiples sources. *Id.* ¶16.  Those

21  sources were alleged to include Defendants' participation in regularly scheduled meetings

22  focusing on the enterprise business itself, as well as the integration of Fusion-io, and also their

23  participation in regularly scheduled meetings of SanDisk's business heads team that addressed

24  the enterprise business, among other topics.  *Id.*  Further, the Class alleges that when the

25  Defendants made the false and misleading statements touting the purported success of the

26  enterprise business, they were aware that investors were reacting poorly to SanDisk's overall

27

28

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:15-CV-01455-VC

1  performance, which included slowing profits and the loss of SanDisk's largest customer in a

2  portion of the business separate from enterprise.  *Id.*

3  **III.    ARGUMENT**

4  **A.      The Settlement Merits Final Approval by the Court**

5  This Court applies the same standard when considering preliminary approval of a

6  settlement as when it considers final approval.  *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030,

7  1035-37 (N.D. Cal. 2016).  Thus, as it did at the preliminary approval stage, in determining

8  whether to grant final approval of the Settlement, the Court must consider the largely overlapping

9  factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), and Fed. R. Civ. P.

10  23(e)(2).

11  The Preliminary Approval Motion explained why those factors merit approval of the

12  proposed Settlement here (ECF No. 270), and in granting Preliminary Approval, the Court agreed

13  with that assessment.  *See* ECF No. 275.

14  This memorandum supporting final approval summarizes the previous discussion of those

15  factors, which continue to support approval of the Settlement, and also discusses one additional

16  factor that was not ripe at the time of preliminary approval – the reaction of the Class – which

17  now provides additional support for final approval.

18  Importantly, in weighing whether to grant final approval, a court must not "second guess"

19  the settlement terms, and a settlement "hearing is not to be turned into a trial or rehearsal for trial

20  on the merits."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615,

21  625 (9th Cir. 1982).  Instead, its review should be "'limited to the extent necessary to reach a

22  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

23  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

24  adequate to all concerned.'"  *Hanlon*, 150 F.3d at 1027.[4]

25  Courts must "be mindful of the Ninth Circuit's policy favoring settlement, particularly in

26  class action lawsuits."  *E.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1040-41 (N.D.

27

28  [4]         Unless otherwise indicated herein, all citations are omitted.

5

1    Cal. 2008).   "[V]oluntary conciliation and settlement are the preferred means of dispute

2    resolution."  *Officers for Justice*, 688 F.2d at 625.

     **B.    Establishing a Presumption of Reasonableness, the Settlement Is a Product of
             Arm's-Length Negotiations Conducted by an Experienced Mediator**

             Where a proposed settlement is the product of arm's-length negotiations conducted by

     capable and experienced counsel, a court begins its analysis with a presumption that the settlement

     is fair and reasonable.  *See In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D.

     Cal. 2014).  Courts have also recognized that "[t]he assistance of an experienced mediator in the

     settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*,

     No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Feyko v. aAd

     *Partners LP*, No. LACV 11-05511 DDP (PJWx), 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7,

     2014) ("Settlements reached with the help of a mediator are likely non-collusive."); *In re Atmel*

     *Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31,

     2010) ("Judge Phillips' participation [as mediator] weighs considerably against any inference of

     a collusive settlement.").  As described in the Preliminary Approval Motion and Weintraub

     Declaration, the proposed Settlement is the product of extensive arm's-length negotiations

     between highly experienced and capable counsel, who were well-informed about the strengths

     and weaknesses of the claims and defenses, pursuant to a formal mediation process overseen by

     a well-respected mediator with significant expertise in securities class actions.  Accordingly, the

     proposed Settlement is presumptively fair and reasonable.

     **C.    The *Hanlon* Factors Support Final Approval**

             **1.    The Amount Offered in the Settlement Is Substantial**

             As explained in the Preliminary Approval Motion and Weintraub Declaration, the

     proposed $50 million Settlement is well within the range of reasonableness in light of the risks of

     continued litigation and potential recovery at trial.  The percentage-of-recovery of 14% to 58%

     here is a considerably larger recovery as a percentage of damages than in most securities class

     action cases.  *See*, *e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA,

     2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering

6

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:15-CV-01455-VC

7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million. The settlement thus represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class actions securities litigations."); ECF No. 271-5 at 9 (2018 Cornerstone Report estimating that from 2009-2017, the median percentage of "simplified tiered damages" that all securities class actions recovered was approximately 5%).

In addition, though "the very essence of a settlement is compromise, a yielding of absolutes," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted), the $50 million Settlement also compares favorably as an absolute value. In that regard, the Settlement is more than four times larger than the $11.3 million median settlement amount of reported securities cases in 2018. *See* ECF No. 271-5 at 3. Viewed either as a percentage of the potential recovery at trial or an absolute value relative to securities class actions, the Settlement is an outstanding result and squarely within the range of reasonableness.

### 2. The Strength of the Class Representatives' Case Balanced Against the Substantial Risks of Continued Litigation

To determine whether the Settlement is fair, reasonable, and adequate, the Court must balance the risks of continued litigation against the benefits afforded to the Class by the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). As set forth in the Preliminary Approval Motion and detailed in the Weintraub Declaration, although Class Representatives believe that the case they have developed against Defendants is strong, that confidence is tempered by the considerable risk, particularly in a complex case such as this, that continued litigation would lead to a smaller recovery, or worse, no recovery at all. The most prominent risks that the Class faced in attempting to defeat summary judgment, secure a jury verdict, and survive appeals therefrom include: (i) that

7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:15-CV-01455-VC

1   the Court might accept Defendants' summary judgment contention that the alleged "qualitative"

2   misstatements prior to January 21, 2015, were immaterial puffery, which threatened to cut the

3   Class Period in half; (ii) that the Court would refuse to reconsider its earlier ruling that the alleged

4   "quantitative" misstatements were inactionable forward-looking statements protected by the

5   PSLRA's "safe harbor," notwithstanding the Ninth Circuit's intervening decision in *In re Quality*

6   *Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017); (iii) that the absence of any financial motive

7   for Defendants' alleged misconduct would persuade the jury that Defendants did not intentionally

8   mislead investors; and (iv) that Class Representatives might lose the "battle of the experts" on

9   issues of loss causation and damages, even assuming they were able to defeat Defendants'

10  *Daubert* challenge to their expert in the first instance.

11          In particular, the risk that the Court might shorten the Class Period and/or that the jury

12  would side with the arguments of Defendants' expert on loss causation and damages had

13  considerable consequences in terms of the amount of the Class' potential recovery.  *See*, *e.g.*, *City*

14  *of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9

15  (S.D.N.Y. May 9, 2014) ("Undoubtedly, the Parties' competing expert testimony on damages

16  would inevitably reduce the trial of these issues to a risky 'battle of the experts' and the 'jury's

17  verdict with respect to damages would depend on its reaction to the complex testimony of experts,

18  a reaction that is inherently uncertain and unpredictable.'").  Each of those arguments, if accepted

19  by the jury, would individually reduce the potential, recoverable Class-wide damages by

20  approximately $100 million to $170 million and would collectively reduce damages by almost

21  $300 million – that is from a maximum amount of $361.5 million to $85.6 million at best.  ECF

22  No. 271-2 ¶33.  Compared to the possibility of a recovery at this substantially lower-level, which

23  would likely be further reduced by the post-trial claims process, and could even end up with no

24  recovery at all, the value the proposed Settlement increases even further.

25

26

27

28

1

2

3.   **The Complexity of Further Litigation, Advanced Stage of the Case, View of Experienced Counsel, and Other *Hanlon* Factors Support the Settlement**

3       As explained in the Preliminary Approval Motion and Weintraub Declaration, the other

4  *Hanlon* factors support approval of the Settlement as well.  Class actions involve a high-level of

5  inherent risk, expense, and complexity, which is among the reasons that judicial policy so strongly

6  favors resolving them through settlement.  *See Linney*, 151 F.3d at 1243.  Even at this advanced

7  juncture in this Action, Class Representatives face "serious hurdles," including a motion for

8  summary judgment, *Daubert* challenges, and inevitable appeals that would "likely prolong the

9  litigation, and any recovery by class members, for years."  *Rodriguez v. W. Publ'g Corp.*, 563

10  F.3d 948, 966 (9th Cir. 2009).  The trial of such a complex and fact-intensive case would take

11  weeks and appeals of rulings on summary judgment or trial would likely add years to the

12  litigation.  If Class Representatives prevailed at trial and were able to defend the judgment on

13  appeal, they would then confront a complicated, protracted, and likely contested claims

14  administration process before this Action was finally resolved.  Barring settlement, there is little

15  question that this Action would be litigated for many years to come, consuming a considerable

16  amount of court time and the Parties' resources, with the possibility that the result would be no

17  better for the Class and might be worse.  Accordingly, this factor supports approval of the

18  Settlement.  *See, e.g., Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at

19  *4 (N.D. Cal. July 11, 2014) ("[T]he high risk, expense, and complex nature of the case weigh in

20  favor of approving the settlement."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal.

21  2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and

22  delays, an immediate and certain recovery for class members . . . favors settlement of this

23  action.").

24       Likewise, because the Settlement occurred at such an advanced stage of the litigation,

25  there can be no doubt that "'the parties carefully investigated the claims before reaching a

26  resolution[,]'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 247, 257 (N.D. Cal. 2015),

27  affording them "sufficient information to make an informed decision about settlement."  *Linney*,

28

9

151 F.3d at 1239.  Here, fact and expert discovery are complete; this attests that the parties and their counsel had sufficient information about the strengths and weaknesses of the case and risks of continued litigation to reach an informed view on settlement.  *See Mego Financial*, 213 F.3d at 459 (factor weighed in favor of approving settlement where plaintiffs had conducted some discovery and consulted with experts).  Moreover, the Parties had engaged in summary judgment briefing and were preparing for trial when the Settlement was achieved.  At this stage of these proceedings, the Parties have a deep understanding of the merits of this litigation and risks of continuing it.  Accordingly, this factor decisively supports final approval of the Settlement.  *See Rodriguez*, 563 F.3d at 967 (factor weighed in favor of settlement approval where parties had conducted extensive discovery and filed summary judgment motions).

In addition, "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Reliance on such recommendations is premised on the fact that "'[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Rodriguez*, 563 F.3d at 967 (alteration in original).  Here, this Action has been prosecuted by experienced counsel who specialize in securities litigation.  Based on their knowledge of the law, experience litigating securities-fraud class actions, and rigorous investigation and consultation with experts in this Action, Class Counsel believe that the Settlement is a very favorable result that is in the best interests of the Class.  *See Omnivision*, 559 F. Supp. 2d at 1043 (holding that, in general, the "'recommendations of plaintiffs' counsel should be given a presumption of reasonableness'").  That militates in favor of this Court's approval of the Settlement.  *See*, *e.g.*, *Pierce v. Rosetta*

1   *Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D. Cal. Sept. 26, 2013) ("the

2   Court credits counsels' view that the settlement is worthy of approval").

3          Finally, the remaining *Hanlon* factors – the risk of decertification and the "presence of a

4   government participant" – are neutral and neither favor nor disfavor final approval.  There is no

5   government participant here.  In addition, as explained in the Preliminary Approval Motion (ECF

6   No. 270 at 17-18), following the class certification order, Defendants have raised no new issues

7   or arguments with regard to the maintenance of a class action that this Court did not already

8   consider.

9                     **4.      The Reaction of the Class to the Proposed Settlement**

10         One *Hanlon* factor that was not ripe to address in the Preliminary Approval Motion was

11  the reaction of the Class to the proposed Settlement.  "The absence of a large number of objections

12  to a proposed class action settlement raises a strong presumption that the terms of the settlement

13  are favorable to the class members."  *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-

14  CAS-FFMx, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014).   Here, the Settlement

15  Administrator disseminated 203,555 Settlement Notice Packets to potential class members,

16  published the Notice in national publications, made information about the Settlement available to

17  the Class and public at large through its website, and provided an email address and dedicated

18  toll-free phone number Class Members could use to seek responses to their inquiries.

19         Although the deadline for Class Members to file objections and exclusions has not yet

20  passed, to date, only one purported request for exclusion has been submitted (it does not include

21  sufficient information to determine whether it is from a Class Member) and no Class Member has

22  submitted an objection to the Settlement.   Class Representatives will provide additional

23  information on these subjects in their reply papers in support of final approval after the deadline

24  for opt-outs and objections has passed.

25         In sum, the *Hanlon* factors strongly support final approval of the proposed Settlement.

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:15-CV-01455-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      The Rule 23(e)(2) Factors Support Approval

The Rule 23(e)(2) factors largely overlap with the *Hanlon* factors and strongly support final approval of the proposed Settlement for the reasons stated above.  As explained in the Preliminary Approval Motion, the other Rule 23(e)(2) factors are satisfied as well.

### 1.      Class Representatives and Class Counsel Have Adequately Represented the Class

As explained in the Preliminary Approval Motion, the adequacy inquiry is focused on: "(1) whether 'the named plaintiffs and their counsel have any conflicts of interest with other class members,' and (2) whether 'the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class.'"  *Brown v. China Integrated Energy Inc.*, No. CV 11-02559 BRO (PLAx), 2015 WL 12720322, at *15 (C.D. Cal. Feb. 17, 2015) (quoting *Hanlon*, 150 F.3d at 1020) (alteration in original).  Here, there are no conflicts.  Since Class Representatives will share *pro rata* in the Class' recovery, the interests of Class Representatives and the Class are directly aligned, as they all have an interest in obtaining the largest possible recovery from Defendants.

Furthermore, Class Representatives have actively supervised the litigation, as demonstrated in their individual declarations (*see* Exs. 1-5), and retained experienced counsel who have vigorously litigated this Action to within months of trial.

### 2.      The Relief Provided Is Adequate Relative to the Effectiveness of the Proposed Distribution Methodology, Attorneys' Fees Requested, and Any Agreement Made in Connection with the Proposed Settlement

As explained in the Preliminary Approval Motion, the $50 million cash Settlement obtained is adequate relative to "the effectiveness of [the] proposed method of distributing relief to the class, including the method of processing class-member claims[.]"  Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Plan of Allocation developed by Class Representatives' expert, based on the opinions he would have offered at trial, provides for a claims process that distributes the Net Settlement Fund *pro rata* relative to Class Members' estimated losses.  Courts regularly approve similar allocation plans in securities class action cases.  *See In re Oracle Sec. Litig.*, No. C-90-

12

0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").[5]

Likewise, the relief provided is adequate relative to "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii).  As set forth in the Fee and Expense Application, Plaintiffs' Counsel are seeking a fee award of 25% of the Settlement Fund.  This request, which is at the Ninth Circuit's benchmark in common fund cases, would result in a negative multiplier of 0.78, that is, it would be less than Plaintiffs' Counsel's collective lodestar to date.  Such an award is easily appropriate here for the reasons stated in the Motion For Attorneys' Fees (as is the request for reimbursement of necessary litigation expenses) and is consistent with awards in similar cases.[6]

### 3.    The Settlement Treats Class Members Equitably Relative to Each Other

As explained in the Preliminary Approval Motion, the proposed Plan of Allocation, which provides for *pro rata* distribution based on Class Members' losses, treats Class Members equitably relative to each other.

\* \* \*

In sum, the Rule 23(e)(2) factors, like the *Hanlon* factors, strongly support final approval of the Settlement.

---

[5]      As noted in the Preliminary Approval Motion, the claims administrator will make a second distribution if economically feasible, and once the distribution process is complete, any amounts remaining in the Net Settlement Fund will be distributed in equal amounts to the Consumer Federation of America and Council of Institutional Investors or other such non-profit organization approved by the Court.  The named organizations have no relationships with Plaintiffs' Counsel and promote interests similar to the securities laws.

[6]      As explained in the Preliminary Approval Motion, this factor also takes into account "any agreement made in connection with the propos[ed]" settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and (e)(3).  Here, the only such agreement is the Supplemental Agreement that permits Defendants to terminate the Settlement if the number of Class Members who request exclusion exceed a certain amount, which the Parties provided to the Court for *in camera* review as part of the preliminary approval process.  Such agreements are standard in securities class action cases and does not affect the recovery that Class Members will receive under the Settlement.

1

### E.     The Plan of Allocation Is Fair and Reasonable

2        Class Representatives also seek the Court's final approval of the Plan of Allocation of the

3   Net Settlement Fund and approval of the methodology by which the Settlement proceeds will be

4   allocated among Class Members.  "Assessment of a plan of allocation of settlement proceeds in

5   a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same

6   standards of review applicable to the settlement as a whole—the plan must be fair, reasonable,

7   and adequate."  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL

8   12303367, at *8 (C.D. Cal. July 9, 2013); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-

9   85 (9th Cir. 1992).   "'An allocation formula need only have a reasonable, rational basis,

10  particularly if recommended by experienced and competent [class] counsel.'"  *In re Broadcom

11  Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 WL 8152913, at *2 (C.D. Cal. Sept. 12,

12  2005) (internal quotations omitted).

13       The details of the Plan of Allocation here, prepared by Class Representatives' damages

14  expert, were set forth in the Preliminary Approval Motion (ECF No. 270), which the Court

15  granted, and are also discussed in the Weintraub Declaration (¶¶113-17).  Its objective is to

16  provide an equitable basis upon which to distribute the Net Settlement Fund among eligible Class

17  Members.  The Plan of Allocation is consistent with the relevant provisions of the PSLRA

18  regarding calculation of and limitations on damages.  The Plan of Allocation will result in a fair

19  distribution of the available proceeds among Class Members who submit valid claims, is similar

20  to plans that courts have approved in other securities cases, and should be approved here.

21  Moreover, to date, no Class Member has voiced any objection to the fairness or reasonableness

22  of the Plan of Allocation.

23

### F.     The Notice Procedure Satisfied Due Process

24       Rule 23 requires the parties to provide class members with "the best notice . . . practicable

25  under the circumstances, including individual notice to all members who can be identified through

26  reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Furthermore, Rule 23(e)(1) requires provision of

27  reasonable notice to all class members that would be bound by the proposed settlement.  "Notice

28

is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the notice program endorsed by this Court in the Preliminary Approval Order (ECF No. 275) met the requirements necessary to protect the due process rights of the Class.  Pursuant to the terms of the Settlement, the Notice: (1) briefly described the nature and status of this Action; (2) defined the Class, claims, and issues at the center of this Action; (3) explained the benefits of the Settlement to the Class; (4) explained the procedure for opting out or objecting to the Settlement; (5) explained the binding effect of remaining in the Class; (6) provided the Settlement Administrator's contact information and a included a link to the Settlement Website; (7) provided information on the formal fairness hearing; and (8) provided information on how to file a claim.

While Rule 23 requires that reasonable efforts be made to reach class members, it does not require that each individual class member actually receive notice.  *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).  The Notice program here was comprehensive and multi-pronged, fully satisfying the applicable requirements of due process and Rule 23.  Epiq has disseminated by mail and email 203,555 Settlement Notice Packets, published the Summary Settlement Notice in in *Investor's Business Daily*, and transmitted the Summary Settlement Notice over *PR Newsire*.  Weintraub Decl. ¶¶108-09.  Accordingly, the notice was reasonably calculated under the circumstances to – and did – fairly apprise the members of the Class of the pendency of this Action, terms of the Settlement, and right to object and exclude themselves.  The Settlement Administrator's effort to maximize notice to putative Class Members, coupled with the Court-approved content and appearance of the Class notices and Caim Form, renders this notice plan consistent with Rule 23 and due process.  *See, e.g.*, *Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *3-4 (N.D. Cal. Aug. 4, 2015).

## IV.   CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation and enter the Final Order and

1    Judgment.  A proposed Final Order and Judgment will be submitted with Class Counsel's reply

2    papers, based on the form approved by the Court in conjunction with its Preliminary Approval

3    Order (*see* ECF No. 271-1 at Ex. B), after the September 5, 2019, objection deadline has passed.

4    Dated:  August 22, 2019                    Respectfully submitted,

5                                               **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

6                                               By: */s/ Max R. Schwartz*
                                                DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
7                                               MAX R. SCHWARTZ (*pro hac vice*)
                                                The Helmsley Building
8                                               230 Park Avenue, 17th Floor
                                                New York, NY 10169
9                                               Telephone: (212) 223-6444
                                                Facsimile:  (212) 223-6334
10                                              Email: dweintraub@scott-scott.com
                                                          mschwartz@scott-scott.com
11
                                                *Attorneys for Class Representatives and the Class*
12
                                                JONATHAN GARDNER (*pro hac vice*)
13                                              CAROL C. VILLEGAS (*pro hac vice*)
                                                ROSS M. KAMHI (*pro hac vice*)
14                                              **LABATON SUCHAROW LLP**
                                                140 Broadway
15                                              New York, NY 10005
                                                Telephone: (212) 907-0700
16                                              Facsimile:  (212) 818-0477
                                                Email: jgardner@labaton.com
17                                                        cvillegas@labaton.com
                                                          rkamhi@labaton.com
18
                                                STEVEN J. TOLL (*pro hac vice*)
19                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                1100 New York Avenue, NW Suite 500
20                                              Washington, DC 20005
                                                Telephone: (202) 408-4600
21                                              Facsimile:  (202) 408-4699
                                                Email: stoll@cohenmilstein.com
22
                                                CHRISTINA D. SALER (*pro hac vice*)
23                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                Three Logan Square
24                                              1717 Arch Street, Suite 3610
                                                Philadelphia, PA 19103
25                                              Telephone: (267) 479-5700
                                                Facsimile:  (267) 479-5701
26                                              Email: csaler@cohenmilstein.com

27

28
                                                        16

CHRISTOPHER LOMETTI (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile:  (212) 838-7745
Email:  clometti@cohenmilstein.com

*Additional Plaintiffs' Counsel*

17

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 22, 2019, I authorized the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4

to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5

I certify under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.

7

Executed on August 22, 2019, at New York, New York

8

    */s/ Max R. Schwartz*
    MAX R. SCHWARTZ (*pro hac vice*)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28